CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2010 FEB 10  PM 3: 35

DEPUTY CLERK  _CBh_

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**LUBBOCK DIVISION**

| | |
|---|---|
| UNISOURCE WORLDWIDE, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | **5-10 CV 00 23- C** |
| v. ) | CASE NO. |
| ) | |
| DALE LATIMER and EMPIRE PAPER ) | |
| COMPANY, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

COMES NOW Unisource Worldwide, Inc. ("Plaintiff" or "Unisource") and files this Complaint for Injunctive Relief and Damages ("Complaint") against Defendants Dale Latimer ("Latimer") and Empire Paper Company ("Empire") and states as follows:

### INTRODUCTION

1.     This is a lawsuit brought by Unisource against Latimer and Empire to recover damages and to prevent Latimer and Empire's wrongful acts against Unisource. This lawsuit seeks to prevent Latimer – a former Unisource Sales Representative who resigned from Unisource to work for Empire, a direct competitor – from breaching his Confidentiality, Noncompetition, Nonsolicitation and Invention Assignment Agreement (the "Agreement") with Unisource and using and misappropriating trade secrets and confidential information under common law. The Agreement properly restricts Latimer's ability to use or disclose Unisource's confidential information, retain Unisource property and solicit Unisource customers. This lawsuit further seeks redress for Latimer's disloyal and unauthorized acts prior to and after his resignation, including providing confidential information to and soliciting customers for Empire

while still employed with Unisource; using, misappropriating and destroying Unisource confidential information and trade secrets; deleting Unisource e-mails and other electronic files and conspiring with Empire to interfere with business relations and misappropriate trade secrets. Finally, this lawsuit seeks redress for Empire's acts in both tortiously interfering with Unisource's contractual and business relations by inducing Latimer's various wrongful acts and conspiring with him to steal Unisource's confidential information and customer relationships.

## PARTIES, JURISDICTION, AND VENUE

2.      Unisource is a Delaware corporation with a principal place of business located at 6600 Governors Lake Parkway, Norcross, Georgia. Unisource is registered to do business in the State of Texas.

3.      Latimer is an individual who resides and works in Lubbock, Lubbock County, Texas. Latimer may be served with process at his residence, 9404 Miami Ave., Lubbock, Texas 79423.

4.      Empire is a Texas corporation with a principal place of business located at 2708 Central Freeway East, Wichita Falls, Texas, 76301. Empire may be served with process through its registered agent, John L. Estes, who is located at the same address. Empire conducts business in this judicial district.

5.      This Court has original jurisdiction over this action under 28 U.S.C. § 1332 because the parties are citizens of different states and the matter in controversy exceeds $75,000.00, excluding interest and costs. This Court also has original jurisdiction under 28 U.S.C. § 1331 because Unisource brings a claim pursuant to the Computer Fraud and Abuse Act, 18 U.S.C. § 1030. This Court has supplemental jurisdiction over Unisource's state law claims pursuant to 28 U.S.C. § 1367.

6.     This Court has personal jurisdiction over Latimer and Empire because they are residents of this District.

7.     Venue is proper in this District and this Division under 28 U.S.C. § 1391 because Defendants are residents of this District and because a substantial portion of the events giving rise to the claims occurred in this District.

## FACTS

## LATIMER'S EMPLOYMENT WITH UNISOURCE

8.     Unisource is an independent marketer and distributor of commercial printing and business imaging papers, packaging systems and facility supplies and equipment, including sanitary and janitorial supplies, paper products and other related items.

9.     Latimer commenced his employment with Unisource in 1996 as a sales representative and worked for Unisource in the Lubbock, Texas area throughout his entire employment with Unisource.  Latimer resigned from Unisource on or about January 20, 2010.

10.     In his role as sales representative, Latimer had responsibility for selling Unisource products, including paper, packaging and facilities supplies, to customers in Texas.

11.     As a sales representative, Latimer managed numerous customer relationships for Unisource.  Over the course of managing those relationships, Latimer regularly obtained and used price quotes from vendors and customers.  He also handled numerous special projects for Unisource customers.

12.     Latimer's duties as a sales representative included maintaining physical files at Unisource's Lubbock, Texas office that included, among other things, pricing and project information for customers and potential customers he serviced and/or solicited while working for Unisource.

13.     Latimer also maintained numerous electronic files regarding the customers and potential customers he serviced and solicited for Unisource. These files are the property of Unisource and were maintained on Unisource's computer server.

14.     While employed at Unisource, Latimer had access to Unisource's confidential information and trade secrets, including but not limited to customer and potential customer lists and data, including purchasing habits, price lists, delivery routes and schedules, credit information and the identities of and contact information for key personnel; vendor and supplier information, including product pricing and discounts; profit margins; business strategies, including sales and marketing strategies, plans, and forecasts; operational and financial data and analyses, including sales data and trends; product-related information, including training, services and pricing strategies; and personnel information, including organizational structure, compensation and qualifications of employees and other similar matters. The development, maintenance and confidentiality of this information are essential to Unisource's business.

15.     Unisource treats its confidential information and trade secrets as confidential and makes reasonable efforts to maintain the secrecy and confidentiality of that information through, among other things, requiring employees to enter confidentiality agreements like the one Latimer entered, protecting confidential information and data through the use of passwords, requiring employees to return all information upon separation from Unisource, and limiting access to confidential information to those who have a legitimate need for such information to perform their jobs.

16.     Unisource's confidential information and trade secrets derive economic and competitive value from not being generally known to Unisource's competitors. For example, if a Unisource competitor obtained its customer-specific pricing information, then that competitor

4

would have a competitive advantage over Unisource by being able to undercut Unisource's price without Unisource knowing the competitor's pricing information.

## LATIMER'S AGREEMENT WITH UNISOURCE

17.     Latimer executed the Agreement with Unisource on August 8, 2005.  A copy of the Agreement is attached hereto as Exhibit A.

18.     Following his execution of the Agreement, Unisource provided Latimer with confidential information, including, but not limited to, information regarding its customers, suppliers, pricing, products, and business plans.

19.     The Agreement between Latimer and Unisource contains the following relevant definitions:

> 1.b.    "Business of Unisource" means selling, distributing or otherwise providing printing and specialty papers, packaging supplies and equipment, and industrial and commercial maintenance supplies and equipment.
>
> 1.c.    "Material Contact" as used in the Non-Solicitation provision below means personal contact or the supervision of the efforts of those who have direct personal contact with a supplier or customer.  "Material Contact" as used in the Non-Recruitment provision below includes personal contact with other Unisource employees of the supervision of the work of other employees of Unisource through subordinate managers in the chain of command.
>
> 1.d.    "Confidential Information" means information about the Company and its employees, customers and/or suppliers which is not generally known outside of the Company, which Employee learns of in connection with Employee's employment with the Company, and which would be useful to competitors of the Company.  Confidential Information includes, but is not limited to: (1) business and employment policies, marketing methods and the targets of those methods, finances, business plans, promotional materials, and price lists; (2) the terms upon which the Company obtains products from its vendors and sells them to customers; (3) the nature, origin, composition and development of the company's products; and (4) the manner in which the Company provides products and services to its customers.

1.e.   "Trade Secrets" means Confidential Information which meet the additional requirements of the Uniform Trade Secrets Act or similar state law.

20.   The Agreement restricts Latimer's use or disclosure of Unisource's confidential information during his employment and after termination:

2.   <u>Duty of Confidentiality</u>.   Employee agrees that during his employment with the Company and for a period of five (5) years following the cessation of that employment for any reason, Employee shall not directly or indirectly divulge or make use of any Confidential Information or Trade Secrets (so long as the information remains a Trade Secret or remains confidential) without prior written consent of the Company. Employee further agrees that if Employee is questioned about information subject to this agreement by anyone not authorized to receive such information, Employee will promptly notify Employee's supervisor(s) or an officer of the Company. This Agreement does not limit the remedies available under common or statutory law, which may impose longer duties of non-disclosure.

21.   The Agreement also requires that Latimer return all Unisource property following the termination of his employment:

3.   <u>Return of Property and Information</u>.   Employee agrees not to remove any Company property from the Company's premises, except when authorized by the Company, Employee agrees to return all the Company's property within seven (7) days following the cessation of Employee's employment for any reason. Such property includes, but is not limited to, the original and any copy (regardless of the manner in which it is recorded) of all information provided by the Company to Employee or which Employee has developed or collected in the scope of Employee's employment, as well as all Company-issued equipment, supplies, accessories, vehicles, keys, instruments, tools, devices, computers, cell phones, pagers, materials, documents, plans, records, notebooks, drawings, or papers.

22.   The Agreement further prohibits Latimer's solicitation of certain Unisource customers:

5.   <u>Non-Solicitation Covenant</u>.   Employee agrees that during employment with the Company and for a period of 12 months following the cessation of employment for any reason, Employee

6



will not directly or indirectly solicit or attempt to solicit any business in competition with the Business of Unisource from any of the Company's customers or suppliers with whom Employee had Material Contact during the last year of Employee's employment with the Company and who are listed on Exhibit "B" attached hereto.

23.     Customers listed in Exhibit "B" to the Agreement include Arrowhead Mills, Anderson Merchandising Inc., Blue Sky Pet Foods – Dry Plant, City of Amarillo Purchasing Department, Majestic Media, Cintas Corporation, Tejas Industries, Dennis Bros. Printing, and Blue Sky Pet Foods – Cannery.

## LATIMER'S RESIGNATION AND MISAPPROPRIATION AND DELETION

## OF CONFIDENTIAL INFORMATION, TRADE SECRETS

## AND COMPUTER FILES

24.     On January 20, 2010, Latimer announced his intention to resign from Unisource and accept employment with Empire, a direct competitor.

25.     The following day, Thursday January 21, 2010, Latimer met with Unisource Business Manager Dennis O'Neill, Latimer's direct supervisor.  O'Neill asked Latimer to remain employed with Unisource and also reminded Latimer of his obligations under the Agreement. Latimer declined to remain employed with Unisource.

26.     On January 21, 2010, Latimer's final day with Unisource, RC Taylor, a customer Latimer serviced while working for Unisource, sent a letter to Dart Container (a manufacturer) requesting that Dart transfer all of RC Taylor's redistribution business with Dart to Empire.  The letter from RC Taylor specifically listed John Severyn at Empire as the relevant contact person at Empire and provided Dart with Severyn's email and phone numbers at Empire.

27.     Upon information and belief, Latimer solicited RC Taylor on behalf of Empire while Latimer still worked for Unisource.

28.    Since Latimer's resignation, Unisource has also discovered that Latimer shared Unisource's pricing, customer, and cost support information with Empire prior to his resignation. Moreover, Latimer intentionally tried to conceal his actions from Unisource.

29.    For example, on Tuesday January 12, 2010, at 4:44 p.m. (nine (9) days before Latimer resigned from Unisource), Latimer sent an e-mail from his personal Blackberry to John Severyn, an employee of Empire, in which Latimer asked Severyn for a contact person at Kimberly-Clark, a Unisource vendor, for customers to contact to move their business. Latimer sent this e-mail in the context of sharing Unisource's confidential information with Empire and working with Empire to move the business of Unisource customers to Empire prior to his resignation from Unisource. Although Latimer was still employed by and working for Unisource, in his e-mail to Severyn, Latimer referred to the customer as "our customer."

30.    Although Latimer sent this e-mail to Empire while he was working for Unisource, he intentionally tried to conceal this e-mail from Unisource. Indeed, Latimer sent e-mails from his Unisource e-mail account, not related to Empire, minutes before and after sending this e-mail to Empire. However, Latimer intentionally elected to send this e-mail to Empire regarding customers and cost information from his personal blackberry rather than from his computer.

31.    Furthermore, in December 2009 and January 2010, Latimer used a thumb (USB drive) drive at Unisource's Lubbock office to transfer electronic files from his Unisource desktop computer. Upon information and belief, Latimer had not previously used a thumb drive to transfer company files from the Unisource server/computer to his own personal drive.

32.    Latimer used a thumb drive to transfer confidential Unisource files from Unisource's password protected server to his own personal drive / computer at the same time that

he was both sharing Unisource confidential information with Empire and soliciting Unisource customers on behalf of Empire.

33.     In December 2009, in connection with a request for assistance on his computer, Latimer disclosed to Unisource IT personnel that he was using a thumb drive and that he had transferred the files regarding the customers and potential customers he solicited for Unisource from Unisource's server to his thumb drive.

34.     Latimer has not returned this thumb drive or the contents thereof to Unisource.

35.     In early January 2010, Unisource employees witnessed Latimer shredding an unusually large quantity of Unisource documents.

36.     After Latimer's resignation later in January 2010, Unisource searched Latimer's office at Unisource's Lubbock, Texas facility and could not locate the vast majority of physical files for the customers and potential customers Latimer serviced and solicited during his last year of employment at Unisource.

37.     After Latimer's resignation, Unisource also conducted a search for customer and potential customer files serviced and solicited by Latimer on Unisource's server.  Although Unisource discovered numerous electronic file folders for customers assigned to Latimer, the majority of the folders were empty.

38.     After Latimer's resignation from Unisource, Unisource also discovered that Latimer deleted numerous customer related e-mails from his Unisource account.

39.     Upon information and belief, Latimer took the physical files that he had maintained over years of working for Unisource from the Lubbock office shortly prior his resignation, as well as one or more thumb drives.

40.     Upon information and belief, Latimer deleted numerous customer files and e-mails from Unisource's server prior to his resignation in an effort to cover his tracks and hamper Unisource's efforts to compete after his resignation.

41.     The destruction and misappropriation of the files and e-mails related to the customers and potential customers Latimer solicited and serviced while working for Unisource, has significantly impeded Unisource's ability to service its clients properly.

42.     Latimer has also used Unisource's confidential information to solicit its customers since joining Empire.  For example, during the week following his resignation from Unisource, Latimer used Unisource customer pricing information in an effort undercut Unisource's price and steal a customer from Unisource that he serviced and solicited while working for Unisource.

43.     In a letter dated February 1, 2010, counsel for Unisource demanded that Latimer return all Unisource property in his possession.  To date, Latimer has not returned any additional Unisource client files, either in physical or electronic form.

## COUNT I

## BREACH OF FIDUCIARY DUTIES BY LATIMER

44.     Unisource restates the allegations contained in Paragraphs 1 through 43 of this Complaint.

45.     During his employment with Unisource, Latimer owed Unisource fiduciary duties to refrain from disclosing Unisource confidential information, misappropriating Unisource's trade secrets, and soliciting Unisource customers for a competing business.

46.     Latimer continues to owe a duty of confidentiality to Unisource to refrain from disclosing its confidential information or misappropriating its trade secrets.

47.     Latimer breached his fiduciary duties by taking Unisource's physical and electronic files relating to the customers assigned to, solicited by and/or serviced by Latimer, as well as by deleting electronic files and e-mails prior to his resignation.

48.     Latimer also breached his fiduciary duties by sharing Unisource's trade secrets and confidential information with Empire during his employment.

49.     Latimer further breached his fiduciary duties by soliciting Unisource customers on behalf of Empire during his employment with Unisource and by assisting Empire in doing the same.

50.     As a direct and proximate result of Latimer's breaches of his fiduciary duties, Unisource has been damaged and Latimer has gained and benefited and will continue to gain and benefit.

51.     Latimer's acts were fraudulent and malicious in that he intentionally participated in the solicitation of Unisource customers before his resignation, took electronic and physical files with him, and deleted numerous electronic files and e-mails to cover his tracks and impair Unisource in competing with him.  Accordingly, Unisource is entitled to recovery of damages, including punitive damages and attorney's fees.

## COUNT II

## AIDING AND INDUCING BREACH OF FIDUCIARY DUTIES BY EMPIRE

52.     Unisource restates the allegations contained in Paragraphs 1 through 51 of this Complaint.

53.     Upon information and belief, Empire induced Latimer to breach his fiduciary duties to Unisource even though Empire knew that Latimer had a special relationship with Unisource requiring utmost fidelity, integrity, and trust.  As such, Empire is a joint tortfeasor

with Latimer and are jointly and severally liable for Unisource's damages, including punitive damages and attorney's fees.

## COUNT III

## MISAPPROPRIATION OF TRADE SECRETS BY DEFENDANTS

54.    Unisource restates the allegations contained in Paragraphs 1 through 53 of this Complaint.

55.    Unisource's trade secrets provide Unisource with a significant economic and competitive advantage.

56.    Specifically, Unisource's confidential information and trade secrets include, but are not limited to, customer and potential customer lists and data, including purchasing habits, price lists, delivery routes and schedules, credit information and the identities of and contact information for key personnel; vendor and supplier information, including product pricing and discounts; profit margins; business strategies, including sales and marketing strategies, plans, and forecasts; operational and financial data and analyses, including sales data and trends; product-related information, including training, services and pricing strategies; and personnel information, including organizational structure, compensation and qualifications of employees and other similar matters.

57.    Unisource gathered, analyzed, and compiled the trade secrets at issue through the expenditure of substantial time, labor, skill, and money.

58.    Unisource takes reasonable means to maintain the secrecy of its trade secrets.

59.    The trade secrets constitute a unique pecuniary interest of Unisource.

60.    Latimer took Unisource's trade secrets through improper means by taking client files, including pricing and cost information, product specifications and customer buying habits and lists, vendor files and information and financial data in physical and electronic form.

61.     Latimer and Empire have used and will continue to use the trade secrets in competition with Unisource to gain financial benefits, specifically by using customer, pricing, and cost support information to solicit Unisource customers and to undercut Unisource's positions with those customers.

62.     As a direct and proximate result of this misappropriation and wrongful use of Unisource's data, Latimer and Empire have damaged and continue to damage Unisource, and have gained and benefited and continue to gain and benefit

63.     Unisource has suffered damages by injury to its competitive advantage as a result of Defendants' actions.

64.     Because Defendants' actions were malicious and willful and in conscious disregard of Unisource's rights, Unisource is entitled to punitive damages.

## COUNT IV

## BREACH OF CONTRACT BY LATIMER

65.     Unisource restates the allegations contained in Paragraphs 1 through 64 of this Complaint.

66.     Latimer has a continuing obligation to abide by the terms of his Agreement and the restrictive covenants contained therein.

67.     The Agreement is reasonably necessary for the protection of Unisource's interests in the customer relationships and goodwill associated with its operations.   Further, the Agreement is reasonably necessary to protect Unisource's confidential information and trade secrets.

68.     Latimer's Agreement was supported by good and valuable consideration to which Latimer would not have otherwise been entitled absent his execution of the Agreement, specifically Unisource's exposing Latimer to its confidential information and trade secrets.

Unisource's provision of trade secrets and confidential information to Latimer supports his promises not to use or disclose Unisource's confidential information or trade secrets, or solicit or service restricted clients, which he has done in breach of his agreement not to do so.

69.     The Agreement is a valid and enforceable contract, and Unisource has fully performed all of its obligations under the Agreement.

70.     The restrictive covenants contained in the Agreement are valid and enforceable. They were ancillary to, or part of, an otherwise enforceable agreement at the time the agreement was made, contained reasonable limitations as to the time, geographic area and scope of activity to be restrained, and did not impose a greater restraint than was necessary to protect Unisource's goodwill or other business interests.

71.     By misappropriating and using Unisource's confidential information and/or trade secrets and by refusing to return Unisource property, Latimer has breached his Agreement and, unless enjoined, will continue to do so.

72.     By soliciting Unisource customers on behalf of Empire during and after his employment with Unisource, Latimer has breached his Agreement and, unless enjoined, will continue to do so.

73.     Latimer's breach of his obligations under the Agreement has caused and, unless enjoined, will continue to cause, substantial, immediate, and irreparable injury, including but not limited to the loss of Unisource's customers, confidential information, and trade secrets.

74.     Unisource has no adequate remedy at law to Latimer's ongoing breach of his obligations under his Agreement.

75.     As a direct and proximate result of Latimer's breach of contract, Unisource has been damaged and Latimer has gained and benefited and will continue to gain and benefit.

## COUNT V

### TORTIOUS INTERFERENCE WITH UNISOURCE'S AGREEMENT WITH LATIMER BY EMPIRE

76.     Unisource restates the allegations contained in Paragraphs 1 through 75 of this Complaint.

77.     Latimer had and has certain obligations to Unisource under the Agreement.

78.     Empire knew of the existence of the Agreement.

79.     Empire interfered with Unisource's relationship with Latimer by encouraging the breaches of his Agreement with Unisource.

80.     Empire acted without privilege or justification.

81.     As a direct and proximate result of these actions, Unisource has suffered and continues to suffer damages.

## COUNT VI

### CONVERSION BY LATIMER

82.     Unisource restates the allegations contained in Paragraphs 1 through 81 of this Complaint.

83.     Unisource was and still is the owner of the physical and electronic files maintained by Latimer in connection with the performance of his duties for Unisource.

84.     As of the date of his resignation, Latimer unlawfully and without authority assumed dominion and control over Unisource's property to the exclusion of Unisource's rights in the property by removing the physical and electronic files from Unisource's property and retaining them after the his resignation.

85.     Unisource is entitled to the fair market value of the property that Latimer took, as well as pre-judgment interest.

86.    Latimer's conversion of the property, as alleged above, was malicious in that Latimer knew that the property converted belonged to Unisource, but has refused to return it despite a pre-litigation demand made by Unisource.  Accordingly, Unisource asks that exemplary damages be awarded against Latimer.

## COUNT VII

### VIOLATION OF CHAPTER 134 OF THE
### TEXAS THEFT LIABILITY ACT BY LATIMER

87.    Unisource restates the allegations contained in Paragraphs 1 through 86 of this Complaint.

88.    When Latimer took Unisource's files, trade secrets, and confidential information for his own benefit and for the benefit of Empire, he knowingly appropriated Unisource's property.

89.    Unisource was injured as a result of Latimer's violation and is therefore entitled to recover actual damages and reasonable attorney's fees and costs pursuant to the Texas Theft Liability Act, Chapter 134 of the Texas Civil Practice and Remedies Code.

## COUNT VIII

### VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT BY LATIMER

90.    Unisource restates the allegations contained in Paragraphs 1 through 89 of this Complaint.

91.    Latimer's actions in downloading to an electronic storage device sensitive and confidential information from Unisource's computer system for a reason he knew was not authorized and during a time in which he knew such access would not have been authorized had Unisource known of his intention to resign and join a competitor, constitute violations of the

Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030. Latimer's actions in downloading the data exceeded his authorization to use Unisource's computer system.

92.     Latimer's actions in deleting electronic files and e-mails from Unisource's computer system for a reason he knew was not authorized and during a time in which he knew such deletions would not have been unauthorized had Unisource known of his intention to resign and join a competitor, constitute violations of the CFAA. Latimer's actions in deleting the files and e-mails exceeded his authorization to use Unisource's computer system.

93.     Latimer was only authorized to use Unisource's computer system to further advance the business interests of Unisource and was prohibited from using the system or the data contained therein for his own purposes or the purposes of a competitor. When Latimer downloaded and deleted the data for himself (and/or for the benefit of a third party), he ceased to be an agent of Unisource and acted for his own benefit or the benefit of Empire.

94.     The Unisource computer system is used extensively in interstate commerce as it assists in the management and operation of Unisource's business operations throughout the United States.

95.     Latimer deleted from the computer that Unisource assigned to him files and e-mails that he knew incriminated him with respect to his employment with Empire. Thus, Latimer acted with intent to defraud Unisource as that phrase is defined in the CFAA, and obtained a thing of value, namely Unisource's trade secrets and other confidential and proprietary information.

96.     Latimer's actions are part of a scheme to injure and harm Unisource and its business operations. He acted in a calculated and dishonest method with an intention to defraud

Unisource and to obtain, use, and disclose Unisource's trade secrets, thereby damaging the integrity of its data through their efforts.

97.     Unisource has suffered losses and damages by reason of these violations in excess of $5,000 in less than a one-year period of time.

98.     Unisource's losses relate to the costs incurred in assessing the loss of its data, as well as costs and expenses incurred in order to recover or replace the data.

**COUNT IX**

**TORTIOUS INTERFERENCE WITH CONTRACTUAL
AND BUSINESS RELATIONS BY DEFENDANTS**

99.     Unisource restates the allegations contained in Paragraphs 1 through 98 of this Complaint.

100.    Unisource has existing and prospective relationships with numerous customers.

101.    Defendants had knowledge of these existing and prospective customer relationships with customers.

102.    Defendants interfered with Unisource's relationships with its existing and potential customers by using Unisource's trade secrets and confidential information to solicit those customers, as well as benefiting from Latimer's breach of contract and fiduciary duties.

103.    Defendants acted without privilege or justification.

104.    As a direct and proximate result of these actions, Unisource has suffered and continues to suffer damages.

**COUNT X**

**CONSPIRACY BY DEFENDANTS**

105.    Unisource restates the allegations contained in Paragraphs 1 through 104 of this Complaint.

106.   Latimer and Empire became members of a combination.

107.   The purpose of this combination was to accomplish an unlawful purpose and/or a lawful purpose by unlawful means.

108.   The Defendants conspired by concerted action to breach Latimer's contract with and fiduciary duties owed to Unisource, to delete and then misappropriate Unisource's confidential information and trade secrets, and to tortiously interfere with Unisource's employment relations and business relations.

109.   Defendants had a meeting of the minds on this object or course of action and committed one or more overt acts to further the object or course of action.  These overt acts include, but are not limited to: (a) using Unisource's trade secrets and confidential information for their own purposes and not for the benefit of Unisource; (b) deleting Unisource's confidential information and trade secrets to cover their tracks; (c) taking, without Unisource's consent, Unisource's confidential information and trade secrets and (d) wrongfully interfering with Unisource's business relations with its customers

110.   The Defendants are jointly and severally liable for the acts done in furtherance of the conspiracy.

111.   As a direct and proximate result of the wrongful acts in furtherance of the conspiracy, Unisource has suffered damages.

## COUNT XI

### TEMPORARY RESTRAINING ORDER

112.   Unisource restates the allegations contained in Paragraphs 1 through 111 of this Complaint.

113.   Unisource is entitled to immediate injunctive relief, including a temporary restraining order for Defendants' wrongful conduct.

19

114. Unisource is entitled to a temporary restraining order because of Latimer's breaches of his contractual and fiduciary obligations, use, disclosure, acquisition, and/or other misappropriation of Unisource's confidential information and trade secrets, and other unfair competition against Unisource, including the solicitation of Unisource's clients and tortious interference of contracts and business relationships.

115. Likewise, Unisource is entitled to a temporary restraining order because of Empire's use, disclosure, acquisition, and/or other misappropriation of Unisource's confidential information and trade secrets, and other unfair competition against Unisource, including the solicitation of Unisource's clients and tortious interference of contracts and business relationships.

116. Unisource will suffer irreparable injury if Defendants are not restrained as follows:

    a. Defendants shall not use, disclose, or acquire Unisource's confidential information or trade secrets;

    b. Defendants shall not directly or indirectly, solicit, serve, sell to, divert, receive or otherwise handle business from any of the customers reflected in the materials taken by Latimer or otherwise covered by Latimer's Agreement;

    c. Defendants shall return all confidential information, trade secrets, and other property belonging to Unisource in both hard copy and electronic form;

117. There is no adequate remedy at law because Defendants' wrongful conduct has caused and is continuing to cause Unisource to lose its clients, income, and goodwill, and Unisource's damages resulting from such conduct are impossible to determine.

118.    Given the contracts at issue here and Defendants' flagrant disregard for those contracts (as well as Defendants' obligations under the common law), there is a substantial likelihood that Unisource will prevail on the merits.

119.    The harm faced by Unisource outweighs the harm that would be sustained by Defendants if the temporary restraining order is granted. Whereas Unisource is faced with losing its clients, income, and goodwill (that it has invested great time and money to develop), the requested temporary restraining order would not prohibit Latimer from competing with Unisource or working for a competitor. The requested temporary restraining order is narrow in scope and would only prohibit Latimer, directly or indirectly, from soliciting, serving, selling to, diverting, receiving or otherwise handling business from any of the customers reflected in the materials taken by Latimer or otherwise covered by his Agreement.

120.    Issuance of the temporary restraining order would not adversely affect the public interest because the packaging industry is fiercely competitive and the public has many options in the marketplace.

121.    Unisource is willing to post a bond in an amount that the Court deems appropriate.

122.    Unisource, therefore, asks the Court to issue the temporary restraining order as soon as possible.

## COUNT XII

## PRELIMINARY AND PERMANENT INJUNCTION

123.    Unisource restates the allegations contained in Paragraphs 1 through 122 of this Complaint.

124.    Unisource is entitled to a preliminary and permanent injunction restraining Latimer's breaches of his contractual and fiduciary obligations, use, disclosure, acquisition,

and/or other misappropriation of Unisource's confidential information and trade secrets, and other unfair competition against Unisource, including the solicitation of Unisource's clients and tortious interference of contracts and business relationships.

125.  Likewise, Unisource is entitled to a preliminary and permanent injunction restraining Empire's use, disclosure, acquisition, and/or other misappropriation of Unisource's confidential information and trade secrets, and other unfair competition against Unisource, including the solicitation of Unisource's clients and tortious interference of contracts and business relationships.

126.  Unisource will suffer irreparable injury if Defendants are not preliminary and permanently enjoined as follows:

a.  Defendants shall not use, disclose, or acquire Unisource's confidential information or trade secrets;

b.  Defendants shall not directly or indirectly, solicit, serve, sell to, divert, receive or otherwise handle business from any of the customers reflected in the materials taken by Latimer or otherwise covered by Latimer's Agreement;

c.  Defendants shall return all confidential information, trade secrets, and other property belonging to Unisource in both hard copy and electronic form;

127.  There is no adequate remedy at law because Defendants' wrongful conduct has caused and is continuing to cause Unisource to lose its clients, income, and goodwill, and Unisource's damages resulting from such conduct are impossible to determine.

128.  Given the contracts at issue here and Defendants' flagrant disregard for those contracts (as well as Defendants' obligations under the common law), there is a substantial likelihood that Unisource will prevail on the merits.

129. The harm faced by Unisource outweighs the harm that would be sustained by Defendants if the preliminary and permanent injunctions were granted. Whereas Unisource is faced with losing its clients, income, and goodwill (that it has invested great time and money to develop), the requested preliminary and permanent injunctions would not prohibit Latimer from competing with Unisource or working for a competitor. The requested preliminary and permanent injunctions are narrow in scope and would only prohibit Latimer, directly or indirectly, from soliciting, serving, selling to, diverting, receiving or otherwise handling business from any of the customers reflected in the materials taken by Latimer or otherwise covered by his Agreement.

130. Issuance of the preliminary and permanent injunctions would not adversely affect the public interest because the packaging industry is fiercely competitive and the public has many options in the marketplace.

131. Unisource is willing to post a bond in an amount that the Court deems appropriate.

132. Unisource asks the Court to issue the preliminary injunction against Defendants.

133. Unisource also asks the Court to set Unisource's application for permanent injunction for a full trial on the merits and, after trial, to issue a permanent injunction against Defendants.

## **DEMAND FOR JURY**

134. Unisource demands a jury trial and has tendered the appropriate fee.

## **PRAYER FOR RELIEF**

WHEREFORE, Unisource seeks judgment in its favor and an Order granting the following relief:

(1)   The Court should order that Defendants, along with their agents, employers, employees, attorneys and those persons in active concert or participation with them, be enjoined through a temporary restraining order, preliminary injunction, and permanent injunction as follows:

(a)   Defendants shall not use, disclose, or acquire Unisource's confidential information or trade secrets;

(b)   Defendants shall not directly or indirectly, solicit, serve, sell to, divert, receive or otherwise handle business from any of the customers reflected in the materials taken by Latimer or otherwise covered by Latimer's Agreement;

(c)   Defendants shall return all confidential information, trade secrets, and other property belonging to Unisource in both hard copy and electronic form;

(2)   That Unisource be awarded compensatory damages to be proven at trial;

(3)   That Unisource be awarded exemplary or punitive damages in an amount to be proven at trial due to Latimer's and Empire's tortious acts;

(4)   That Unisource be awarded its attorney's fees incurred in bringing this action; and

(5)   That the Court grant such further relief as it deems just.

Respectfully submitted,

UNISOURCE WORLDWIDE, INC.

David L. Countiss
Texas Bar No. 24025311
SEYFARTH SHAW LLP
700 Louisiana
Suite 3700
Houston, Texas 77010
Telephone: (713) 225-2300
Facsimile: (713) 225-2340

By   _Fernando M. Bustos_

Fernando M. Bustos
Texas Bar No. 24001819
LAW OFFICES OF FERNANDO M. BUSTOS,P.C.
1001 Main Street, Suite 510
Lubbock, TX  79401
Telephone (806)780-3976
Facsimile (806) 780-3800

Of Counsel:

Robert C. Stevens
Georgia Bar No. 680142
bstevens@seyfarth.com
*Motion for admission pro hac vice to be filed*
Michael P. Elkon
Georgia Bar No. 243355
melkon@seyfarth.com
*Motion for admission pro hac vice to be filed*

SEYFARTH SHAW LLP
1545 Peachtree Street, N.E.
Suite 700
Atlanta, Georgia 30309
Telephone: (404) 885-1500
Facsimile: (404) 892-7056

Date:   February 10, 2010

25

# UNISOURCE CONFIDENTIALITY, NONSOLICITATION
# AND INVENTION ASSIGNMENT AGREEMENT

This Agreement is made by and between Dale K. Latimer ("Employee") and Unisource Worldwide, Inc. In consideration for employment of Employee and the compensation paid to Employee by the Company, including an additional amount of $500.00 (less appropriate taxes, withholdings and deductions) paid to Employee solely for executing this Agreement, both parties agree as follows:

1. **Definitions**:

   a. "Company" means Unisource Worldwide, Inc., along with its subsidiaries, parents, affiliated entities, and includes the successors and assigns of Unisource or any such related entities.

   b. "Business of Unisource" means selling, distributing or otherwise providing printing and specialty papers, packaging supplies and equipment, industrial and commercial maintenance supplies and graphic imaging supplies and equipment.

   c. "Material Contact" means personal contact or the supervision of the efforts of those who have direct personal contact with a supplier or customer.

   d. "Confidential Information" means information about the Company and its Employees, Customers and/or Suppliers which is not generally known outside of the Company, which employee learns of in connection with employee's employment with the company, and which would be useful to competitors of the Company. Confidential Information includes, but is not limited to: (1) business and employment policies, marketing methods and the targets of those methods, finances, business plans, promotional materials and price lists; (2) the terms upon which the Company obtains products from its vendors and sells them to customers; (3) the nature, origin, composition and development of the company's products; (4) the manner in which the Company provides products and services to its customers.

   e. "Trade Secrets" means Confidential Information which meets the additional requirements of the Uniform Trade Secrets Act or similar state law.

2. **Duty of Confidentiality.** Employee agrees that during employment with the Company and for a period of five (5) years following the cessation of that employment for any reason, Employee shall not directly or indirectly divulge or make use of any Confidential Information or Trade Secrets (so long as the information remains a Trade Secret or remains confidential) without prior written consent of the Company. Employee further agrees that if Employee is questioned about information subject to this agreement by anyone not authorized to receive such information, Employee will promptly notify Employee's supervisor(s) or an officer of the Company. This Agreement does not limit the remedies available under common or statutory law, which may impose longer duties of non-disclosure.

3. **Return of Property and Information.** Employee agrees not to remove any Company property from the Company's premises, except when authorized by the Company. Employee agrees to return all the Company's property within seven (7) days following the cessation of Employee's employment for any reason. Such property includes, but is not limited to, the original and any copy (regardless of the manner in which it is recorded) of all information provided by the Company to employee or which employee has developed or collected in the scope of Employee's employment, as well as all Company-issued equipment, supplies, accessories, vehicles, keys, instruments, tools, devices, computers, cell phones, pagers, materials, documents, plans, records, notebooks, drawings, or papers.

4. **Assignment of Work Product and Inventions.** Employee hereby assigns and grants to the Company (and will upon request take any actions needed to formally assign and grant to the Company and/or obtain patents, trademark registrations or copyrights belonging to the Company) the sole and exclusive ownership of any and all inventions, information, reports, computer software or programs, writings, technical information or work product collected or developed by Employee, alone or with others, during the term of Employee's employment. This duty applies whether or not the forgoing inventions or information are made or prepared in the course of employment with Company, so long as such inventions or information relate to the Business of Unisource and have been developed in whole or in part during the term of Employee's employment. Employee agrees to advise the Company in writing of each invention that Employee, alone or with others, makes or conceives during the term of Employee's employment. Inventions which employee developed before Employee came to work for Company, if any, are attached as Exhibit "A" and excluded from this Section.

5. **Non-Solicitation Covenant.** Employee agrees that during employment with the Company and for a period of 12 months following the cessation of employment for any reason, Employee will not directly or indirectly solicit or attempt to solicit any business in competition with the Business of Unisource from any of the Company's customers or suppliers with whom Employee had Material Contact during the last year of Employee's employment with the Company and who are listed on Exhibit "B" attached hereto.

6. **Non-Recruitment of Company Employees.** While employed by the Company, and for a period of 12 months following the cessation of employment for any reason, employee will not directly or indirectly solicit or attempt to

EXHIBIT "A"

solicit any employee of the Company for the purpose of encouraging, enticing, or causing said employee to terminate employment with the Company.

7. Other Employment After Termination. Employee acknowledges and represents that Employee has substantial experience and knowledge such that Employee can readily obtain subsequent employment which does not violate this Agreement.

8. Remedies and Forum. Either party shall be entitled to injunctive relief in a state or federal court located in _____Collin_____ County, State of _____Texas_____ ("Forum County") upon a showing of irreparable injury. The parties consent to personal jurisdiction and venue solely within these forums and solely in the Forum County and waive all otherwise possible objections thereto. The prevailing party shall be entitled to recover its costs and attorney's fees in any such proceeding. The existence of any claim or cause of action by Employee against the Company, including any dispute relating to the termination of this agreement, shall not constitute a defense to enforcement of said covenants by injunction.

« Employee initials to acknowledge agreement to Remedies and Forum provision

9. Construction of Agreement. The covenants contained herein shall be presumed to be enforceable, and any reading causing unenforceability shall yield to a construction permitting enforcement. If any single covenant or clause shall be found unenforceable, it shall be severed and the remaining covenants and clauses enforced in accordance with the tenor of the Agreement. In the event a court should determine not to enforce a covenant as written due to overbreadth, the parties specifically agree that said covenant shall be enforced to the extent reasonable, whether said revisions be in time, territory, or scope of prohibited activities. This Agreement represents the entire understanding between Employee and the Company on the matters addressed herein and may not be modified, changed or altered by any promise or statement by the Company until such modification has been approved in writing by a manager or officer of the company of equal or higher rank to the person signing this agreement on behalf of the company. The waiver by the Company of a breach of any provision of this Agreement by any employee shall not be construed as a waiver of rights with respect to any subsequent breach by Employee. This agreement shall be governed and interpreted according to the laws of the State of Florida.

**Employee has carefully read and understands the provisions of this Agreement, and understands that he or she has the right to seek independent advice or to propose modifications prior to signing the agreement.**

Executed at _____ , ____ this ____ day of _____ 2005
        (city)    (state)

_____
Employee

(Print Name) _____

_____
Unisource Worldwide, Inc.

By: _____ (title)

JS 44 (TXND Rev. 2/10)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**5 - 1 0 C V 0 0 2 3 - C**

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| UNISOURCE WORLDWIDE, INC. | Dale Latimer and Empire Paper Company |

**(b)** County of Residence of First Listed Plaintiff    Gwinnett
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    Lubbock
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Fernando M. Bustos, Law Offices of Fernando M. Bustos, P.C., 1001 Main Street, Suite 501, Lubbock, TX 79401; 806-780-3976

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge |
| ☒ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. Section 1367

Brief description of cause:
Breach of contract, breach of fiduciary duty, theft of trade secrets, & tortious interference with contract.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) (See instructions)
PENDING OR CLOSED:

JUDGE _____

DOCKET NUMBER _____

DATE
02/10/2010

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #    LU003629    AMOUNT    350.00    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____